UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

WILLIAM W. LAWRENCE, as Trustee for
the Estate of SHELBYVILLE ROAD SHOPPES, LLC                    APPELLANT

v.                                          CIVIL ACTION NO. 3:13CV-971-S
                                            BANKR. ACTION NO. 11-30124

COMMONWEALTH OF KENTUCKY
TRANSPORTATION CABINET                                          APPELLEE

## MEMORANDUM OPINION AND ORDER

This matter is before the court on appeal from a decision of the United States Bankruptcy Court that a $962, 574.43 good faith deposit paid under a real estate purchase assigned to Shelbyville Road Shoppes, LLC ("the Debtor") is not property of the Debtor's estate subject to turnover under 11 U.S.C. §§ 541 and 542.[1]

On appeal from a decision of the Bankruptcy Court, the district court reviews findings of fact under the clearly erroneous standard and conclusions of law *de novo*. *In re Dow Corning Corp.,* 280 F.3d 648, 656 (6th Cir. 2002).

The underlying facts are not in dispute.[2]

On July 18, 2007, a "Purchase Agreement – Public Sale" ("Purchase Agreement") was entered into between Eagle Development, LLC ("Eagle") and the Commonwealth of Kentucky

---

[1] This ruling of the Bankruptcy Court (Adv. No. 12-3049, DN 55) disposed of the single remaining claim (Count I) of the Adversary Proceeding. The dismissal of Counts II-IV is not before the court.

[2] The factual background is taken from the Bankruptcy Court's decision. References to that decision and other documents will be cross-referenced to the appellate record ("AR")

Transportation Cabinet ("Cabinet") whereby Eagle agreed to pay the sum of $4,812,874.65 to purchase certain property owned by the Cabinet. Pursuant to the Purchase Agreement, Eagle paid a good faith deposit of $962,254.43 to the Cabinet. On August 8, 2007, the Purchase Agreement was assigned to the Debtor.

> The Agreement contains the following pertinent provisions:
>
> As required by the terms of this sale, a good faith deposit is hereby made in the amount of $962,574.93 to be held in a special deposit trust fund by the Transportation Cabinet, Division of Right of Way & Utilities, pending the arrangement of a closing date, to be no sooner than 60 days from date written notice is given by Transportation Cabinet to Purchaser, unless otherwise agreed upon by Purchaser and Transportation Cabinet, at which time, upon delivery of the deed, the balance of $3,850,299.72 will be due and payable. The deed shall be a special warranty deed.
>
> ...The Purchaser agrees that the above mentioned good faith deposit will be forfeited to the Seller as liquidated damages is [sic] the Purchaser fails to consummate this sales transaction as agreed herein.

AR 23, Compl., DN 1, Ex. A at 1.

On July 13, 2009, the Debtor and the Cabinet executed an addendum to the purchase agreement which, in pertinent part, extended the deadline for closing for one year to enable the Debtor to seek a zoning change for the property. The addendum further provided for an additional six-month extension should the parties agree to extend the time beyond the one year period.

The Debtor filed a voluntary petition for Chapter 7 relief on January 11, 2011, two days before the expiration of the eighteen-month extension to close the transaction. William W. Lawrence was appointed as Chapter 7 Trustee ("Trustee") for the Bankruptcy Estate.

The Trustee made a demand that the Cabinet turn the good faith deposit over to the bankruptcy estate. The Cabinet refused. The Trustee then instituted an adversary proceeding seeking, among various theories of relief, a turnover of the property to the estate pursuant to 11 U.S.C. § 542.

Property of the bankruptcy estate is defined in 11 U.S.C. § 541. This provision must be read in conjunction with § 542. As noted in *In re Coomer,* 375 B.R. 800, 803 (Bankr. N.D. Ohio 2007), '[g]enerally, a trustee can only use or sell property of the estate," and "although not specifically stated in § 542, fundamental to the concept of "Turnover" is that the asset to be turned over must be property of the debtor's bankruptcy estate. [citation omitted]."

The turnover provision, § 542(a), provides, in pertinent part:

> ...an entity...in possession, custody, or control, during the case, of property that the debtor may use, sell, or lease under section 363 of this title...shall deliver to the trustee, and account for, such property of the value of such property...

The court stated in *Coomer*, 375 B.R. at 806:

> Section 542(a) is best viewed as an enabling provision, allowing the trustee to obtain possession of property only where the debtor otherwise had a right to possess the property. But where a debtor, and thus a trustee, does not have the right to possess or use the property at the commencement of the case, the right generally cannot be acquired through a turnover action under 542(a). That is, a bankruptcy trustee may not compel the turnover of property pursuant to § 542(a) if the debtor had no right to obtain the property.

The Bankruptcy Court determined that

> At no time during the case up to the filing of the turnover action, did the Debtor have the right to obtain the Deposit, and thus, the Trustee cannot now compel turnover of the Deposit from the Cabinet...The Debtor's "interest" in the Deposit does not include the right to have the Deposit returned under either the terms of the Purchase Agreement or under applicable state law. As such, the Cabinet may not be compelled to turnover the Deposit. Section 542(a) does not provide the Trustee a

substantive right for the immediate possession of the security deposit held by the Cabinet.

AR 326, 328, Bankr. Mem., pp. 8, 10.

The property of the bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Section 541, however, does not expand the debtor's interest in property. The existence and extent of a debtor's interest in property is defined by applicable state law; in this case, Kentucky law. *Butner v. United States*, 440 U.S. 48, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979). "A trustee takes the property subject to the same restrictions that existed at the commencement of the case. To the extent an interest is limited in the hands of a debtor, it is equally limited as property of the estate." *In re Sanders*, 969 F.2d 591, 593 (7th Cir. 1992)(citations omitted).

The Trustee appealed this decision of the Bankruptcy Court, urging a number of principles of Kentucky law that he contends would permit the Debtor to regain possession of the deposit, and therefore, standing in the Debtor's shoes, enable the Trustee to do so. "The burden of proof in a turnover proceeding under Code § 542 is at all times on the party seeking turnover. That party must establish a prima facie case." *In re Weiss-Wolf, Inc.* 60 B.R. 969, 975 (Bankr. S.D.N.Y. 1986), *citing Gorenz v. State of Illinois Dept. of Agriculture*, 653 F.2d 1179 (7th Cir. 1981).

The term "regain" is a bit of a misnomer in that it was Eagle who paid the deposit. "For good and valuable consideration," Debtor was assigned "all of Assignor's right, title and interest in, under and to that certain Sealed Bid (the "Bid")...including, without limitation, all powers, privileges, claims, remedies, actions, causes of action and choses in action of the successful bidder under the Bid." AR 32, 33. The concluding paragraph of the Assignment states "In consideration of the above and other good and valuable consideration, Shelbyville Road Shoppes, LLC hereby

assumes the above assigned Bid and agrees to perform and keep all covenants, agreements and obligations of the Assignor as the successful bidder thereunder." *Id.* The Trustee's Complaint alleges that:

1. In July, 2007, KTC advertised a public sale by sealed bid of the property...

2. Eagle Development...entered into the Purchase Agreement for Public Sale resulting from Bid Invitation No. 07-07-01 for the Property...

3. ...Eagle Development assigned all of its rights in the Purchase Agreement to the Debtor.

The Assignment, however, memorializes an assignment of Eagle's rights in, under, and to something called the "Sealed Bid." The Trustee indicated in its Complaint that the Purchase Agreement resulted from Eagle's successful sealed bid for the purchase of the property. There is no mention in the Assignment of the resulting "Purchase Agreement – Public Sale."

There is no question, though, that the Debtor assumed the position of Purchaser, and that such assumption was acknowledged and accepted by the Cabinet, as evidenced by the Addendum to Purchase Agreement for Public Sale. AR 25-29. In light of this sequence of events, the Trustee would, in the court's view, be hard-pressed to assert that Eagle's payment of the 20% good faith deposit is somehow an independent asset of the Debtor's estate. If it is anything to the Debtor, it must be a payment which is inseverable from the Purchase Agreement which was assumed by the Debtor. This payment does not appear to be assigned to the Debtor by operation of any other document.

The parties agree that on the date of the filing of the bankruptcy petition, two days remained for performance under the Purchase Agreement, and thus the contract was executory. The Trustee was permitted to assume the contract within sixty days, which he did not do. It was therefore

deemed rejected, constituting a breach of the contract deemed to have occurred immediately before the date of the filing of the petition, pursuant to 11 U.S.C. § 365(d)(1) and (g)(1).

The Purchase Agreement's provision for forfeiture of the good faith deposit in the event of the Debtor's failure to perform is a term the Trustee wishes to disregard. However, it is hornbook law that "a trustee cannot accept part of an unseverable executory contract and reject that portion of no benefit to the estate." *In re Meadows*, 39 B.R. 538, 540 (Bankr. W.D.Ky. 1984).

Rather, the Trustee urges that rejection of the contract under § 365 has no bearing on the analysis at all. The Trustee appears to be making a timing argument; that is, that the court, being tasked with determining the interest of the Debtor at the time of the filing of the petition, cannot consider the impact of after-petition events such as the ramifications of the Trustee's decision not to assume the contract on behalf of the estate.

The relation back of the breach to a date prior to the filing of the petition is a mere legal construct to provide the Trustee a period of time in which to evaluate an executory contract. However, the filing of the petition two days prior to the expiration of the period for closing was, admittedly, an attempt by the Debtor to also create a scenario in which the expiration of the term would be halted and the Debtor would be able to avoid breach, all in order to prevent a forfeiture of the deposit. To buy into the Trustee's argument would be to permit the Bankruptcy process to be used as a failsafe mechanism to avoid the operation of clear and unequivocal contract terms which were assumed by the Debtor. The Bankruptcy Court found, without regard to the rejection of the contract by the Trustee, that on the date of the filing of the petition, the Debtor had no interest in the deposit which would allow the Debtor, and thus the Trustee, to regain possession.

The Purchase Agreement defined the Debtor's right to the benefit of the deposit as follows: (1) application of the deposit to the balance of the purchase price at the closing; or (2) forfeiture of the deposit to the Cabinet as liquidated damages if the Debtor failed to close on the transaction. The Bankruptcy Court found that the terms were unambiguous and unequivocal, and that "[t]he Trustee has not pointed to any law, nor has the Court found any law, that would allow the Debtor to recover and regain possession of these funds under state law. Simply stated, there is no provision in the Purchase Agreement or under state law authorizing the Debtor to regain possession. This same restriction also applies to the Trustee." AR 325, Bankr. Mem., p. 7.

The Court correctly rejected the argument that the good faith deposit was held in escrow.

In an attempt to meet the requirements of an escrow under Kentucky law, the Trustee argued that the Kentucky State Treasurer is a third party holding the deposit for the Cabinet. The Bankruptcy Court found this argument to be without merit under the authority of *Home Insurance Co. of New York v. Wilson*, 275 S.W. 691 (Ky.App. 1925), as there is an absence of evidence that the Kentucky State Treasurer is a third party or that the parties intended to escrow the deposit, mandatory elements under Kentucky law for the formation of an escrow arrangement. Indeed, the contract between the parties evidences a contrary intention. While the Bid Invitation required a check to be made out to the "Kentucky State Treasurer," the bid document and deposit were delivered together to the Cabinet, which, in accordance with the terms of the contract, retained the deposit to be applied to the balance of the purchase price on closing, or to be forfeited as liquidated damages should the Debtor fail to close. There was no delivery to a third party nor was there a clear and definite term establishing a future condition required to occur before the Cabinet was entitled to the deposit. Rather, the contract left the Debtor no right to redeem the deposit. At the time of the

commencement of the case, the Debtor merely retained a future right to a credit toward the purchase price upon closing of the sale. Thus the delivery to the Cabinet was absolute, rather than in escrow. *City National Bank of Cairo v. Anderson*, 225 S.W. 361 (Ky. 1920); *Ball v. Sandlin*, 195 S.W. 1089 (Ky. 1917). As found by the Bankruptcy Court, the Debtor did not have the right to possess or use the property at the commencement of the case, and thus a turnover pursuant § 542 to could not be accomplished by the Trustee to reach the deposit. AR, 326, Bankr. Mem., p. 8, *citing In re Lauria*, 243 B.R. 705, 709 (Bankr. N.D.Ill. 2000).

Additionally, the Trustee seeks to have this court address *ab initio* two arguments which he raised before the Bankruptcy Court but which that court declined to address. AR 371, 8/28/13 Bankr. Order, p. 4. This court may, in its discretion, decline to address such arguments on appeal. *In re Cannon*, 277 F.3d 838 (6th Cir. 2002). However, it is not an abuse of discretion to consider for the first time on appeal a question of law intimately bound up with the power of the trustee under the bankruptcy code. *Id.* at 848.

These two new arguments are easily dispatched.

First, the Trustee argues that the transaction was in the nature of a contract for deed. A contract for deed is "a contract for the purchase and sale of real estate under which the purchaser acquires the immediate right to possession...and the vendor defers delivery of a deed until a later time to secure all or part of the purchase price." *Restatement (Third) of Property*: Mortgages § 3.4(a)(1997). This clearly was not the agreement between the parties in this case. The Debtor had no immediate right of possession.

Second, the Trustee argues that the Debtor retained a equitable right to the deposit as a vendee in the event the vendor, the Cabinet, refused or was unable to deliver title to the property.

This does not establish an interest which would entitle the Trustee to turnover of the deposit under § 542. There is no evidence that the Cabinet could not or would not deliver title upon closing. The Trustee's argument is premised upon his accurate contention that at the time of the filing, the Debtor was not in breach of the agreement because the closing period had not yet expired. But this contention would be equally true for the Cabinet as of the date of the filing. Further, the Debtor was required to pay the balance of the purchase price before the Cabinet was required to deliver the deed.

The Trustee cites the case of *United States Rock Asphalt Corporation v. Covington Trust & Banking Co*, 13 S.W.2d 488 (Ky. 1929) in which the plaintiff was found to have the right to reclaim funds which had been deposited in escrow upon the failure of the defendant to tender a deed. There are no factual similarities between that case and the one at bar. Further, to the extent that the Trustee urges that the filing of the petition eliminated the ability of the Cabinet to deliver the deed, this is, as a practical matter, untrue. The Cabinet could have delivered the deed if the Trustee had assumed the contract for the estate. The Trustee cannot have it both ways. If the Trustee wishes to require the court takes a snapshot view of the Debtor's interest at the moment the petition is filed, the period for performing the parties' respective duties under the contract had not yet expired, and no equitable interest in the deposit for failure to deliver the deed could or ever would come to fruition. Alternatively, if the Trustee wishes to consider the rejection of the contract by the Trustee as the mechanism cutting off the Cabinet's ability to deliver the deed, the rejection necessarily results in a breach by the Debtor and the equitable theory of relief would be ineffectual.

In conclusion, **IT IS HEREBY ORDERED AND ADJUDGED** that, for the reasons stated in the June 3, 2013 Memorandum of the Bankruptcy Court, and on other grounds recited herein, the order denying the motion for partial summary judgment as to Count I of the Complaint in Adversary

Proceeding and judgment of the Bankruptcy Court dismissing Count I are **AFFIRMED.** A separate judgment will be entered this date in accordance with this memorandum opinion and order.

January 27, 2014

**Charles R. Simpson III, Senior Judge**
**United States District Court**